The court incorporates by reference in this paragraph and adopts as
the findings and orders of this court the document set forth below.
This document was signed electronically on March 30, 2010, which
may be different from its entry on the record.

IT IS SO ORDERED.



_____
**Arthur I. Harris**
**United States Bankruptcy Judge**

Dated: March 30, 2010

---

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LEVEL PROPANE GASES, INC., | ) | Case No. 02-16172 |
| *et al.*, | ) | Jointly Administered |
|     Debtors. | ) | |
| _____ | ) | |
| _____ | ) | |
| | ) | Adversary Proceeding |
| WILLIAM H. MALOOF, | ) | No. 09-1127 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Arthur I. Harris |
| | ) | |
| MARK UHRICH, Plan | ) | |
| Administrator, | ) | |
|     Defendant. | ) | |

### MEMORANDUM OF OPINION[1]

In this adversary proceeding, the plaintiff, William Maloof, seeks revocation

---

[1] This memorandum of Opinion is not intended for official publication.

of the October 9, 2008, confirmation order for fraud pursuant to Section 1144 of the Bankruptcy Code, as well as relief from three orders entered by the bankruptcy court back in 2002 and 2003. This matter is currently before the Court on the motion of the defendant plan administrator, Mark Uhrich, to dismiss the first amended complaint and the motion of Maloof for leave to file a third amended complaint. For the reasons that follow: (1) the defendant's motion to dismiss the first amended complaint is granted, (2) Maloof's motion for leave to file a third amended complaint is denied, and (3) this adversary proceeding is dismissed. The Court will retain jurisdiction to consider possible sanctions against Maloof and his counsel.

## JURISDICTION

The Court has jurisdiction over this action. Claims seeking revocation of an order of confirmation under 11 U.S.C. § 1144 or revocation of an order of sale are core proceedings under 28 U.S.C. § 157(b)(2)(A), (L), (N), and (O) and 28 U.S.C. § 1334, which falls within the jurisdiction granted to the Court pursuant to Local General Order Number 84, dated July 16, 1984.

## FACTUAL AND PROCEDURAL HISTORY

These jointly administered cases have a long procedural history, with numerous appeals, adversary proceedings, and repeated motions for

2

reconsideration. The Court will not attempt to recap all of the procedural history. Instead, the Court will focus only on those matters relevant to the current adversary proceeding in which Maloof seeks revocation of the October 9, 2008, order of confirmation for fraud under 11 U.S.C. § 1144, as well as relief from an agreed order entered five days after these jointly administered cases were filed in June of 2002, and from two asset sale orders entered back in 2003.

*The Level Propane Bankruptcy Cases*

On June 6, 2002, various creditors filed involuntary bankruptcy proceedings under Chapter 7 against seven debtors. Pursuant to an agreement and stipulation of the relevant parties entered five days later, the cases were converted to proceedings under Chapter 11 and jointly administered under Case 02-16172 (Docket #5).

On April 14, 2003, the bankruptcy court granted the U.S. Trustee's motion to appoint an examiner to address allegations that the debtors' counsel had misled the bankruptcy court and had failed to provide objective advice to the debtors. On June 6, 2003, the examiner, Professor G. Ray Warner of St. Johns University School of Law, filed his report with the bankruptcy court. The examiner concluded that the evidence failed to support the allegations that had prompted his appointment and that the debtors' counsel had acted in good faith, competently, and honestly.

3

On June 27, 2003, following a court-approved marketing and sales procedure, the bankruptcy court entered an order on the debtors' motion to approve the sale of the debtors' propane distribution business as a "going concern" and overruled Maloof's objections to the proposed sale. (Docket #1721). The bankruptcy court found that the consideration to be paid by the purchaser, Eaglerock Propane LLP ("Eaglerock") was "fair and reasonable," that the asset purchase agreement had been negotiated "at arm's length, without collusion and in good faith," and that the debtors and Eaglerock were "entitled to the protections of section 363(m) of the Bankruptcy Code. (Docket #1721).

On December 11, 2003, the debtors' parking lot business was also sold as a "going concern," without objection. (Docket #2161). Nevertheless, on January 5, and January 7, 2004, Maloof moved the bankruptcy court to stay its orders approving the sale of the propane business and parking lots. Those motions were denied on January 20, 2004, on grounds of mootness, lack of standing, and previous failure to object. (Docket #2223). The bankruptcy court further held that even if Maloof were somehow found to have standing, he failed to demonstrate any of the factors required for issuing a stay pending appeal.

Maloof eventually filed appeals attempting to challenge both sale orders; however, those sale orders were affirmed by U.S. District Judge Ann Aldrich who

4

rejected Maloof's appeals related to the sale orders.  *See William Maloof v. Level Propane Gases, Inc.*, Nos. 1:03CV2038, 1:03CV2044, 1:03CV2106, 1:04CV0092, 1:04CV0307 (N.D. Ohio March 24, 2006).  As Judge Aldrich explained:

> Each of Maloof's arguments is entirely without merit. Maloof's failure to seek a stay prior to the disposal of the disputed propane assets is fatal to his claims in Cases No. 03-2038 and 03-2004. The debtor/appellees contend, and Maloof does not dispute, that the approved sale was consummated on July 2, 2003. Maloof did not seek a stay of this sale until January of 2004, after which there were no propane assets remaining in the possession of Level Propane. Bankruptcy law is clear in its pronouncement that the failure to seek a stay prior to the consummation of a sale to a good faith purchaser subjects an appeal to dismissal for mootness. *See*, *e.g.*, *255 Park Plaza Assocs. Ltd. Pshp. v. Connecticut Gen. Life Ins. Co. (In re 255 Park Plaza Assocs. Ltd. Pshp.)*, 100 F.3d 1214 (6th Cir. 1996):
>
>> The bankruptcy mootness rule differs from general mootness law because it is based on the general rule that the occurrence of events which prevent an appellate court from granting effective relief renders an appeal moot, and the particular need for finality in orders regarding stays in bankruptcy ... Bankruptcy's mootness rule is premised upon considerations of finality, protection of the integrity of the foreclosure sale process, and the court's inability to rescind the sale and grant relief on appeal even if the purchaser of the property is a party to the appeal.
>
> *Id.* at 1216 (citations and internal quotation marks omitted). The rule itself may be found at 11 U.S.C. § 363(m):
>
>> The reversal or modification on appeal of an authorization ... of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.
>
> Again, Maloof did not seek a stay in this case until more than six months after the propane assets were sold to Eaglerock. The record contains no evidence establishing Eaglerock as anything other than a good faith

purchaser under § 363. The mootness rule is therefore triggered, and Maloof cannot prevail in these two appeals.

> . . . .

> Maloof also lacks standing to bring an appeal in Case Nos. 04-0092 and 04-0307, as he failed to object to the sale of the parking lot assets at any point before requesting a stay from the Bankruptcy Court. This failure precludes him both from challenging the sale itself (under the doctrine of preservation of objections), and from challenging the denial of a stay. The Bankruptcy Court, like this court, lacks the power to grant a stay of a sale pursuant to bankruptcy to anyone other than a "person aggrieved." Without objecting to the sale, Maloof cannot qualify as such a person. . . .

> Even if the court were to somehow disregard these crucial procedural impediments, all five cases are substantially flawed on their merits. Maloof's arguments, as contained in his four briefs, consist entirely of cursory and unsupported statements of fraud committed by the Debtors' counsel. Without some manner of support for these allegations, the court must uphold the determination of the Bankruptcy Court and its independent Examiner that the disposition of the Level Propane businesses in bankruptcy was entirely legitimate and above-board.

Slip op. at 4-6.

Unable to stop the sale of the debtors' business assets, Maloof filed repeated motions seeking to reopen the examiner's investigation and to vacate the sale orders. All of these motions were denied. *See*, *e.g.*,

- Order Denying Maloof's First Motion to Reopen Examiner's Investigation and for Substitute Examiner (Docket #2974) (June 26, 2006);

- Order Denying Maloof's First Motion to Vacate Agreed Conversion Order (Nov. 28, 2006) (Docket #3039), *aff'd* N.D. Ohio 1:07CV00153 (Docket #20) (Aug. 16, 2007) (Judge Aldrich);

6

- Order Denying Maloof's Renewed Motion to Reopen Examiner's Investigation (Docket #3037) (Nov. 28, 2006), *aff'd* N.D. Ohio 1:07CV00103 (Docket #16) (Aug. 16, 2007) (Judge Aldrich);

- Order Denying Maloof's Third Amended Motion to Vacate Conversion and Sale Order (Feb. 28, 2008) (Docket # 3253), *aff'd* N.D. Ohio 1:08CV0679 (July 28, 2009) (Judge Oliver), *appeal pending* Sixth Circuit No. 09-4066;

- Order Dismissing Maloof's Amended Counterclaim (March 6, 2008) in Adv. 07-1278 (Docket #49); *aff'd* N.D. Ohio 1:08CV519 and 1:08CV861 (July 28, 2009) (Judge Oliver), *appeal pending* Sixth Circuit Nos. 09-3973 and 09-4033;

- Order Denying Maloof's Motion to Vacate Bankruptcy Court's Feb. 28, 2008, Order Denying Maloof's Earlier Motion to Vacate Conversion and Sale Orders (Docket # 3388) (July 28, 2008).

*See also* Order (Docket #3376) (July 28, 2008) (directing Maloof to turnover to debtors' counsel all electronic files and records of the debtors in his possession), *aff'd Maloof v. Level Propane Gases, Inc.* No. 1:08CV2097 (N.D. Ohio July 28, 2009) (Judge Oliver), *appeal pending* Sixth Circuit No. 09-4040.

Two other parties, Ohio Truck and Trailer, Inc., ("Ohio Truck") and TAL Financial Services ("TAL Financial"), also filed motions to vacate raising essentially the same issues as Maloof. The bankruptcy court denied these motions on Nov. 7, 2008, as to Ohio Truck (Docket #3496), and on Nov. 14, 2008, as to TAL Financial (Docket #3504). Attorney Eisler appealed both orders on behalf Ohio Truck and TAL Financial. In an opinion dated February 1, 2010, the

7

Bankruptcy Appellate Panel for the Sixth Circuit dismissed Ohio Truck's appeal

for lack of standing and affirmed the bankruptcy court's decision denying TAL

Financial's motion to vacate. *See In re Level Propane Gases, Inc.*, 422 B.R. 93

(6th Cir. 2010). In rejecting TAL Financial's claims, the BAP noted that Maloof

had already litigated and lost the same claims:

> The fraud claims asserted by TAL Financial were raised repeatedly by
> Maloof prior to confirmation of the Plan and during plan confirmation
> process. Although TAL Financial attempts to argue that the Verbos-Anter
> e-mail evidence is "new," the evidence is indistinguishable from other
> allegations of fraud raised by Maloof. Those allegations have been
> thoroughly considered and rejected by both the bankruptcy court and the
> district court.

422 B.R. at 102.

These prior rulings by the bankruptcy court and on appeal include numerous

other instances of courts addressing and rejecting Maloof's repetitive allegations of

fraud. For example, in connection with the denial of Maloof's renewed motion to

reopen the examiner's investigation the bankruptcy court imposed sanctions

against Maloof and Eisler, specifically rejecting Maloof's claim that his emails and

other evidence constituted "newly discovered evidence." *See* Memorandum of

Opinion and Order (Docket #3047) (Dec. 7, 2006). That decision was affirmed by

the district court. *See* Order (Docket #13), *Maloof v. Level Propane Gases, Inc.*,

No. 1:07CV0150 (N.D. Ohio Aug. 17, 2007) (Judge Aldrich), *aff'd Maloof v. Level*

8

*Propane Gases, Inc.*, No. 07-4150 (6th Cir. July 30, 2008) (*per curiam*). In

affirming the bankruptcy court's imposition of sanctions, Judge Aldrich noted:

> Maloof's record of vexatious, meritless litigation is not limited to the
> bankruptcy court, however. This court has had to resolve numerous appeals,
> adversary proceedings and civil actions brought by Maloof.

Order (Docket #13) at 1.  On appeal, the Sixth Circuit held:

> [R]ather than raise new legal arguments or present new evidence that might
> have justified an expectation of a different ruling, Maloof simply alleged the
> same claims and relied upon the same evidence that the bankruptcy court
> had already found to be unavailing. Indeed, instead of properly appealing or
> otherwise challenging the bankruptcy court's earlier rulings on his requests
> for a new examiner, Maloof sought to inundate the court with new motions
> requesting the same form of relief that had already been denied.
> Accordingly, we do not find any basis for concluding that the bankruptcy
> court abused its discretion in imposing sanctions.

Opinion at 7, Case No. 07-4150.

On March 21, 2008, the debtors filed their motion for an order approving the

disclosure statement and establishing procedures for voting on the debtors' plan of

reorganization.  Maloof objected to the motion, challenging the proposed

disclosure statement for its failure to address the issues of fraud upon the court

which he had previously raised and which the bankruptcy court had repeatedly

rejected.  (Docket ## 3306 and 3370).  Following a hearing, the bankruptcy court

entered an order approving the disclosure statement as amended.  (Docket #3377).

Pursuant to the disclosure statement order, the debtors solicited acceptances

9

and rejections of the proposed joint liquidating plan.  Maloof was the only party

who filed an objection to the plan, raising the same fraud on the court and other

objections that had previously been rejected:

> The proposed Liquidation Plan is yet another occasion by which those who
> control the purported Debtors in the proceedings to ratify the fraud on the
> court by which these proceedings were initiated and advanced through this
> Court; Incorporating by reference the Shareholder's Motion to Vacate,
> Docket Item No. 3140, as amended [the Second Motion to Vacate], and
> incorporating further by reference the Shareholder's arguments set out in his
> Brief in Maloof v. Level Propane Gases, Inc., Case No. 08-0670 (U.S.D.C,
> N.D.O.), now pending before the District Court, the objecting shareholder
> says that these proceedings are a vehicle by which the Bank Group seized
> control of the going concern of Level Propane with the singular purpose of
> excluding altogether the Shareholder from the propane marketing industry.
> That this was the purpose of the Bank Group is born out by the concerted
> efforts taken, as set out in the Shareholder's Motion to Vacate, to seize the
> going-concern assets so that they could be folded into the assets of Amerigas
> in October, 2003.

Objection to Proposed Chapter 11 Liquidation Plan (Docket #3455) at  ¶¶ 1-2

(Sept. 29, 2008).  Following a hearing on confirmation, the bankruptcy court

overruled Maloof's objection and entered an order confirming the plan on

October 9, 2008.  Neither Maloof nor any other party in interest appealed from the

confirmation order.

Under the Plan as confirmed by the bankruptcy court, Mark Uhrich was

appointed to serve as plan administrator of the consolidated estate of the debtors as

of the confirmed plan's effective date.  On October 23, 2008, the plan

10

administrator took possession of the consolidated estate's assets and commenced his appointment. In accordance with the confirmation order, all injunctions and releases contained in the confirmed plan and the confirmation order went into effect on the plan's effective date. As Maloof acknowledges (first amended complaint at ¶ 1), his equity interest in the debtors was cancelled upon the effective date by operation of the plan. *See* Plan at § 4.4 (Docket #3382). Further, on the same day it entered the confirmation order, the bankruptcy court entered an order disallowing Maloof's purported unsecured claim in its entirety. (Docket #3470).

*The Current Adversary Proceeding*

On April 6, 2009, Maloof filed the current adversary proceeding against the plan administrator. On May 7, 2009, Maloof filed an amended and a second amended complaint, but immediately withdrew the second amended complaint. He then filed a motion for leave to file a second amended complaint, but later withdrew that motion. In the meantime, the defendant filed a motion to dismiss the adversary proceeding on May 18, 2009. On May 28, 2009, Maloof moved for leave to file a third amended complaint.

On June 1, 2009, Maloof filed a motion seeking the recusal of U.S. Bankruptcy Judge Randolph Baxter. According to the proposed third amended complaint and the motion to recuse, Judge Baxter was part of the alleged

11

conspiracy to improperly seize control of the debtors' assets back in 2002 or earlier.

On September 21, 2009, after careful consideration of each averment set forth in the recusal motion, the bankruptcy court denied Maloof's motion to recuse. The bankruptcy court described the allegations as being "totally untrue in every respect, fully contrived, and abusive in an effort to hinder the orderly prosecution of the debtors' cases, and a deliberate attempt to impugn the integrity of the Court." (Adv. Docket #42).  The bankruptcy court further held that it was "clear from [Maloof's] conduct ... that [his] actions are fraudulent, obstreperous, and are not made to promote a meaningful and orderly prosecution of the case," and that the motion was filed in violation of Bankruptcy Rule 9011. (Adv. Docket #42).

Nevertheless, in a separate order dated September 21, 2009, Judge Baxter recused himself from this adversary proceeding *sua sponte* due to his own criminal referral of Maloof and attorney Eisler to the U.S. Attorney's Office and the Federal Bureau of Investigation based upon their conduct in connection with these proceedings.  On September 22, 2009, this adversary proceeding was randomly assigned to the undersigned judge.

### The First Amended Complaint

Maloof's first amended complaint alleges four claims for relief.  The first

12

claim seeks revocation of the October 9, 2008, order of confirmation for fraud pursuant to 11 U.S.C. § 1144. The second claim for relief seeks an injunction against enforcement of the June 11, 2002, agreed order converting these jointly administered cases to proceedings under Chapter 11. The third claim for relief seeks an injunction against enforcement of the sale order dated June 27, 2003, involving the sale of the debtors' propane distribution business. The fourth claim for relief seeks an injunction against enforcement of the sale order dated December 10, 2003, involving the sale of the debtors' parking lot assets.

The allegations supporting these four claims center around Maloof's previously argued and decided allegations of conspiracy and fraudulent schemes. In particular, he alleges improper seizure of control of the debtors by the debtors' lenders, concealment and destruction of documents of debtor's customer data base, manipulation of tank counts and customer counts, and concealment of customer payment checks. Maloof also asserts that the plan proponents "made specific representations to this Court and fraudulently concealed the wrongdoing, outlined [in the first amended complaint], which misrepresentations and fraudulent concealments were material to the feasibility of the Plan." Additionally, Maloof argues that the claims asserted in state court litigation "would not yield the funding represented and in that unlawfulness of these proceedings would make any

13

approval of a Liquidated [plan], even were a source of funding found, would be impossible as a matter of law." Maloof also asserts that the plan proponents "failed to disclose the merits" of Maloof's appeal from the bankruptcy court's order approving a settlement agreement with various parties (Docket #3266), and that the confirmation order should be revoked as a result.[2]

### The Proposed Third Amended Complaint

The proposed third amended complaint appears to be identical to the first amended complaint, except for the addition of a new paragraph 10, which alleges that Judge Baxter was a part of the scheme to unlawfully take over Level Propane, its affiliates, and their respective assets. According to the proposed third amended complaint, "[Judge Baxter's] designated role was to frustrate any resistance to the take-over of Level Propane while under the jurisdiction of the Bankruptcy Court." (Adv. Docket #19-2 at ¶10).

### Other Adversary Proceedings Seeking Revocation of the Order of Confimation under Section 1144

In addition to the current adversary proceeding filed by Maloof , there are

---

[2] Maloof's appeal to the district court was unsuccessful as Judge Oliver affirmed the decision of the bankruptcy court approving the settlement agreement. *See* Order, *Maloof v. Level Propane Gases, Inc.,* No. 08CV0835 (N.D. Ohio July 28, 2009), *appeal pending* Sixth Cir. No. 09-4037.

14

two other adversary proceedings in which parties have sought to revoke the order of confirmation. In *Wilhelm v. Uhrich*, Adv. 09-1116, Judge Baxter granted the defendant's motion to dismiss in an opinion dated June 24, 2009. In *Maxus Capital Group v. Uhrich*, Adv. 09-1118, Judge Baxter granted the defendant's motion to dismiss in an opinion dated July 6, 2009. Both rulings were appealed to the Bankruptcy Appellate Panel for the Sixth Circuit, which heard oral argument in the two appeals on February 2, 2010, and took the cases under advisement. As Maloof was not a party to the two appeals, this Court will not consider the dismissal of the two adversary proceedings in determining the merits of the current adversary proceeding filed by Maloof – Adv. 09-1127. *See generally Taylor v. Sturgell*, 553 U.S. 880 (2008) (discussing nonparty preclusion under federal common law).

DISCUSSION

*Dismissal Under Bankruptcy Rule 7012 and Fed. R. Civ. P. 12(b)(6)*

The defendant seeks dismissal of this adversary proceeding under Fed. R. Civ. P. 12(b)(6), made applicable pursuant to Fed. R. Bankr. P. 7012(b). In *Bell Atlantic Corp.v. Twombly*, 550 U.S. 544 (2007), the Supreme Court enunciated a new standard for a motion to dismiss under Rule 12(b)(6), which the Supreme Court further clarified in *Ashcroft v. Iqbal*, __U.S. __, 129 S. Ct. 1937

15

(2009).

As the Supreme Court explained in *Iqbal*,

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557, 127 S. Ct. 1955 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556, 127 S. Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While

16

legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

Pursuant to Rule 12(b), the Court will not consider matters outside the pleadings in addressing the defendant's Rule 12(b)(6) motion to dismiss; however, the Court may consider and take judicial notice of matters of public record, including certain court records, under Rule 201 of the Federal Rules of Evidence. For example, a court may, on a motion to dismiss, "take judicial notice of another court's opinion not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 576, (6th Cir. 2008). Taking judicial notice of prior decisions is particularly helpful, and necessary, in cases such as this, where the claims asserted are or may be barred by *res judicata* or law of the case. *See Winget v. JP Morgan*, 537 F.3d 577-78 (adversary complaint barred by *res judicata* based upon previously adjudicated objections).

*Maloof's Claim under Section 1144 (Claim I)*

Section 1144 of the Bankruptcy Code provides in pertinent part:

On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice

17

and a hearing, the court may revoke such order if and only if such
order was procured by fraud.

In *Tenn-Fla Partners v. First Union National Bank of Florida (In re Tenn-Fla Partners)*, 226 F.3d 746 (6th Cir. 2000), the Sixth Circuit directly addressed the application of section 1144 when it affirmed the district court's affirmance of the bankruptcy court's decision finding that the debtor, Tenn-Fla Partners, had fraudulently procured a confirmation order in violation of section 1144. In *Tenn-Fla Partners*, the Sixth Circuit expressly adopted the reasoning of the bankruptcy court that fraud, as used in section 1144, must be actual as opposed to constructive fraud; thus, there must be evidence of fraudulent intent. *See* 226 F.3d at 750-51.

With regard to fraud necessary for revocation of an order on a confirmed plan, it has been held in the chapter 13 context and adopted in the chapter 11 context that the plaintiff must prove:

> (1) that the debtor made a representation regarding ... compliance with Code § [1129] which was materially false;

> (2) that the representation was either known by the debtor to be false, or was made without belief in its truth, or was made with reckless disregard for the truth;

> (3) that the representation was made to induce the court to rely upon it;

> (4) [that] the court did rely upon it; and

> (5) that as a consequence of such reliance, the court entered the confirmation order.

18

226 F.3d at 750 (quoting *First Union National Bank of Florida v. Tenn-Fla Partners (In re Tenn-Fla Partners)*, 170 B.R. 946, 967 (Bankr. W.D. Tenn. 1994)).

"Under [the law of the case] doctrine, a court should not reopen issues decided in earlier stages of the same litigation." *Agostini v. Felton*, 521 U.S. 203, 236 (1997). The Supreme Court has explained that the doctrine should apply in the absence of "extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988). The doctrine of law of the case is designed to ensure that a decision on a rule of law continues to govern the same issues in subsequent stages of the same case. These rules have developed in order to maintain consistency and avoid reconsideration of matters once they have been decided during the course of a single continuing lawsuit. *See generally Rouse v. Daimler Chrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002):

> Under the law-of-the-case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation. *See United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir.1994). The doctrine also bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not.

Most of the fraud allegations in Maloof's first amended complaint are based on actions predating the 2008 confirmation process by a number of years. And

19

while it is uncertain whether such claims, even if true, would constitute fraud in the
procurement of a confirmation order within the meaning of section 1144, what is
apparent is that those same allegations have already been raised multiple times
with the bankruptcy court and with reviewing courts and have been denied
repeatedly by such courts. As such, under the principle of law of the case, those
same allegations of fraud fail to state a claim under Section 1144 of the Bankruptcy
Code.

Indeed, not only has the bankruptcy court applied principles of law of the
case to Maloof's repetitive filings, but so have various reviewing courts on appeal.
*See*, *e.g.*, *Maloof v. Level Propane Gases, Inc.*, No. 1:08CV679, slip op. at 11-13
(N.D. Ohio July 28, 2009) (Judge Oliver) (applying law of the case in affirming
bankruptcy court's order denying Maloof's second motion to vacate conversion
and sale orders); *Maloof v. Level Propane Gases, Inc.,* No. 1:07CV103, slip op.
at 6 (N.D. Ohio Aug. 16, 2007) (Judge Aldrich) (applying law of the case in
affirming bankruptcy court's order denying Maloof's renewed motion to reopen
examiner's investigation). For example, in a 27-page opinion, Judge Oliver first
recounted Maloof's repetitive efforts to challenge various rulings in these
bankruptcy proceedings. Judge Oliver then wrote:

[T]he finality doctrine, which is also known as the law of the case doctrine,

20

promotes the finality of a court's orders by preventing the relitigation of issues because, "[u]nder that doctrine, the decision of [a] court at one stage of the case is binding in successive stages of the same litigation." *League of Women Voters of Ohio v. Blackwell,* 432 F. Supp. 2d 734, 739 (N.D. Ohio 2006). As the Sixth Circuit recognized in *Bowles v. Russell,* 432 F.3d 668, 676 (6th Cir. 2005): "The law of the case, like issue preclusion, or collateral estoppel, prevents the relitigation of an issue once there has been a judgment on the merits. Later disputes concerning that issue are considered foreclosed in any subsequent suit." In other words, "the doctrine of the law of the case is similar in that it limits relitigation of an issue once it has been decided, but the law of the case doctrine is concerned with the extent to which the law applied in decisions at various stages of the same litigation becomes the governing principle in later stages." *Id.* (citing 18 Moore's Federal Practice, § 134.20 (Matthew Bender 3d ed.)).

Here, as noted by the Bankruptcy Court, both that court and the district court on appeal rejected the arguments made in Maloof's First Motion to Vacate, *i.e.,* that the banks allegedly committed a "fraud on the court." These same assertions were reiterated in Maloof's First and Second Motions to Reopen the Examiner's Investigation, and his Motions to disqualify Debtors' Counsel.

While Maloof argues that "the doctrine of finality does not apply in this case since the two Motions to Vacate depend upon distinctly different evidence, from which arise distinctly different theories of the case," Maloof misunderstands the doctrine of finality. The doctrine of finality does not operate to give litigants repeated "bites at the apple" by simply providing nuance on their prior arguments or submitting new items of evidence going to the same issues. Both the Bankruptcy Court and courts in the Northern District of Ohio and the Sixth Circuit Court of Appeals have rejected Maloof's multiple attempts to invalidate the Debtors' bankruptcy based on allegations of fraud. The issues raised in Maloof's Counterclaim is the same. Accordingly, the court finds that Maloof has failed to establish that the Bankruptcy Court had an erroneous view of the law with respect to the finality of its prior decisions, or that its findings of fact were clearly erroneous in the instant case.

Slip op. at 24-26.

While Maloof cites to *In re Kostoglou*, 73 B.R. 596 (Bankr. N.D. Ohio 1987), for the proposition that section 1144 "encompasses any action in a bankruptcy proceeding by which a party obtains confirmation of a Plan by deceptive practices with a deceptive intent" 73 B.R. at 599, what is missing here is reliance by the bankruptcy court on any deception or fraud. This is because the bankruptcy court had already heard and repeatedly rejected the same "fraud on the court" allegations by Maloof long before the confirmation process as well as during the confirmation process itself.

To the extent that Maloof's first amended complaint also includes some allegations related to fraud in the actual confirmation process, *see* first amended complaint (Adv. Docket #11 at ¶¶30-32), those claims must fail for similar reasons – they have already been raised by Maloof  and been rejected by the bankruptcy court. For example, Maloof specifically raised the substance of the allegations in  ¶¶30-32 of the first amended complaint in his objections to the disclosure statement. (Docket ## 3306, 3370). Since the bankruptcy court already heard and rejected those arguments during the confirmation process, *(see* Docket ## 3377, 3471, 3510), Maloof cannot simply repeat these arguments and expect a different result. As the Supreme Court noted in *Arizona v. California*, 460 U.S. 605, 618 (1983), "[the law of the case] doctrine posits that when a court

22

decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Accordingly, the section 1144 claim of Maloof's first amended complaint (Claim I) fails to state a claim upon which relief can be granted and is dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*Maloof's Claims to Vacate Three Orders Entered Back in 2002 and 2003*

*(Claims II, III, and IV)*

In addition to Maloof's claim to revoke the confirmation order, the first amended complaint also seeks to enjoin enforcement of three orders previously entered in the debtors' cases back in 2002 and 2003. Maloof offers no statutory or other basis for vacating these prior orders other than the allegation that each order was procured through a fraudulent scheme, including "fraud on the court." As explained more fully below, the Court will dismiss these claims for a number of reasons.

First, to the extent that the allegations of fraud do not constitute "fraud on the court" within the meaning of Rule 60(d)(3) of the Federal Rules of Civil Procedure, made applicable to this proceeding under Rule 9024 of the Federal Rules of Bankruptcy Procedure, these claims are untimely. *See* Fed. R. Civ. P. 60(c)(1) (motion under Rule 60(b) must be made within a reasonable time – and

23

for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order).

> The elements of fraud on the court include conduct: 1) on the part of an officer of the court; 2) that is directed at the judicial machinery itself; 3) that is intentionally false, wilfully blind to the truth, or is in reckless disregard for the truth; 4) that is a positive averment or a concealment when one is under a duty to disclose; and 5) that deceives the court.

*Workman v. Bell*, 484 F.3d 837, 840 n.1 (6th Cir. 2007)*; accord In re Level Propane Gases, Inc.*, 422 B.R. at 99.

Second, even if these allegations were to fit within the definition of "fraud on the court," under the principles of law of the case, these same claims have already been decided in the course of the debtors' bankruptcy cases, often multiple times, as well as by higher courts on appeal, as noted previously in this opinion at pages19-22.

Although these prior rulings may have been in the debtors' bankruptcy cases or in prior adversary proceedings of those cases, as opposed to the current adversary proceeding, case law supports the proposition that law of the case principles are fully applicable. *See Cohen v. Bucci*, 905 F.2d 1111, 1112 (7th Cir. 1990) ("Adversary proceedings in bankruptcy are not distinct pieces of litigation; they are components of a single bankruptcy case," and suggesting that law of the

24

case may have applied but was not raised by the parties); *In re Montagne*, 2010 WL 396252 slip op. at *6 (Bankr. D. Vt. Jan. 25, 2010) ("Since different adversary proceedings filed in the same main case do not constitute different 'cases,' it would follow that the law of the case doctrine as articulated in one adversary proceeding would apply in another adversary proceeding filed in the same case."). Accordingly, the non-section 1144 claims of Maloof's first amended complaint (Claim I, II, and III) also fail to state a claim upon which relief can be granted and are dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*Maloof's Motion for Leave to File Third-Amended Complaint*

Under Rule 15 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7015 of the Federal Rules of Bankruptcy Procedure, leave to amend should be freely granted when justice so requires. Leave need not be granted if the proposed amendment would be futile. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." 203 F.3d at 417. For the reasons stated below, the Court denies Maloof's motion for leave to file his proposed third amended complaint as futile.

First, under the principle of law of the case, the bankruptcy court has already

25

found these same allegations, which were raised in support of the contemporaneous recusal motion, as being "totally untrue in every respect, fully contrived, and abusive in an effort to hinder the orderly prosecution of the debtors' cases, and a deliberate attempt to impugn the integrity of the Court." (Adv. Docket #42). The bankruptcy court further held that it was "clear from [Maloof's] conduct..that [his] actions are fraudulent, obstreperous, and are not made to promote a meaningful and orderly prosecution of the case," and that the motion was filed in violation of Bankruptcy Rule 9011. (Adv. Docket #42).

Second, the U.S. Court of Appeals for the Sixth Circuit rejected the very same allegations in Maloof's amended petition for a writ of mandamus seeking an order disqualifying Judge Baxter from presiding over the debtors' main bankruptcy proceeding. *See* Order, *Maloof v. Level Propane Gases, Inc.,* No. 09-4251 (6th Cir. Dec. 17, 2009). For example, the amended petition for a writ of mandamus included the same allegations involving Judge Baxter which Maloof raised in his motion to recuse and in his motion for leave to file a third amended complaint. Maloof's filings with the Sixth Circuit included as Exhibit 3 the very motion to recuse he filed in this adversary proceeding. *Compare* Amended Petition for Writ of Mandamus, *Maloof v. Level Propane Gases, Inc.,* No. 09-4251, at ¶¶ 7 and 10 and exhibit 3 (Dec. 7, 2009) *with* Motion to Recuse (Adv. Docket # 23) and

26

Motion for Leave to File Third Amended Complaint (Adv. Docket #19).

Third, even if the Court were to find an exception to the law of the case general principle – "that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," *Arizona v. California*, 460 U.S. at 618, the Court would still deny Maloof's motion for leave to file his proposed third amended complaint under the standard set forth in *Ashcroft v. Iqbal*. Maloof's purportedly new allegations that Judge Baxter was part of the alleged conspiracy to improperly seize control of the debtors' assets back in 2002 or earlier are simply implausible. For example, Maloof's longstanding conspiracy theories, with or without the alleged participation of Judge Baxter, have been rejected by a court-appointed examiner and by every appellate court that has considered his numerous appeals and mandamus filings.

Maloof's attempts to buttress his implausible conspiracy theory with purported emails would be ludicrous, were it not for the fact that even outrageous allegations have the potential to tarnish reputations of even the most-respected judges, such as Judge Baxter. Individuals and their attorneys should not be able to keep frivolous legal challenges alive simply by claiming that the presiding judge is somehow also a part of some illegal conspiracy acting against them. In fact, the purported emails appear simply to be fabrications designed to create a "fraud on

27

the court" claim as a last-ditch effort to reverse rulings that have long since become final and otherwise immune from attack. Examples of the apparent fabrication are purported emails from nonexistent dates, *e.g.*, "Tuesday, October 2, 2002," (*see* Adv. Docket #19-1 at 3), and allegations that the conspiracy included the bankruptcy case of LTV Steel, (*see* Adv. Docket #19-1 at 2-9), when Judge Baxter had no initial involvement in that case, which was filed in Youngstown on December 29, 2000, and immediately assigned to Judge Bodoh. Only after Judge Bodoh retired in 2003, was the LTV case reassigned to Judge Baxter by random draw.

Moreover, even if the purported emails were somehow found to be authentic, it is a significant jump in logic to assume that just because someone asserts that a judge is in on a conspiracy, that it is in fact true. For example, unbeknownst to an honest judge, a person could falsely state in an email that the judge was in on some illegal conspiracy, and the honest judge would otherwise be unaware that someone was claiming the judge to be a part of some illegal conduct. The fact that an examiner and numerous appellate courts have failed to find any improprieties in Judge Baxter's rulings throughout the many years that these debtors' bankruptcy cases have been pending is testament to the frivolous, scandalous, and implausible nature of Maloof's conspiracy allegations involving

Judge Baxter.  Accordingly, the Court denies Maloof's motion for leave to file his proposed third amended complaint.

*Sanctions*

As noted previously, Judge Baxter made a criminal referral of Maloof and attorney Eisler to the U.S. Attorney's Office and the Federal Bureau of Investigation based upon their conduct in connection with this adversary proceeding.  The undersigned judge also previously imposed sanctions on attorney Eisler for his failure to comply with Local Civil Rule 83.5(j) and with several court orders related to his attorney registration suspension by the Ohio Supreme Court.  *See* Order (Adv. Docket #72) (March 11, 2010); *see also* Order, No. 09-4251 at 1 n.* (6th Cir. Dec. 17, 2009) (advising attorney Eisler "to promptly address his suspension").

While the undersigned judge makes no determination at this time as to whether other sanctions are appropriate or should be pursued, the Court will retain jurisdiction to consider possible sanction under 28 U.S.C. § 1927, Rule 9011, or other provisions, as well as a possible motion for sanctions filed by the defendant.  Nevertheless, in leaving open the possibility of sanction proceedings, it is the Court's intention that the order dismissing this adversary proceeding will constitute a final appealable order for purposes of 28 U.S.C. § 158(a)(1).  *See*, *e.g.*, *Jackson v.*

29

*Cintas Corp.*, 425 F.3d 1313, 1316 (11th Cir. 2005) (judgment dismissing entire case on the merits was final appealable order even though district court retained jurisdiction to decide motion for sanctions under Rule 11).  As the Eleventh Circuit noted:

> [E]very circuit that has considered this issue has held that the pendency of a motion for sanctions after a dismissal on the merits does not bar appellate jurisdiction. *See In re Dyer*, 322 F.3d 1178, 1186 (9th Cir.2003); *Brown v. Francis*, 75 F.3d 860, 864 n.3 (3d Cir.1996); *Turnbull v. Wilcken*, 893 F.2d 256, 257 (10th Cir.1990); *Cleveland v. Berkson*, 878 F.2d 1034, 1036 (7th Cir.1989).

425 F.3d at 1316.  *See also Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199-200 (1988) (decision on the merits was final and appealable notwithstanding unresolved issue of attorney's fees).


CONCLUSION

For the foregoing reasons, (1) the defendant's motion to dismiss is granted, (2) Maloof's motion for leave to file a third amended complaint is denied, and (3) this adversary proceeding is dismissed.  The Court will retain jurisdiction to consider possible sanctions against Maloof and his counsel.

IT IS SO ORDERED.

30